IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 1:21-CR-141 |
| v. | ) | |
| | ) | Hon. Leonie M. Brinkema |
| HEATHER SULLIVAN, | ) | Sent. Hr'g Oct. 26, 2021 |
| Defendant | ) | |

## MS. SULLIVAN MEMORANDUM IN AID OF SENTENCING

Almost two years ago, in the midst of her own relapse in a longstanding history of abuse of opioids, part of a decades-long substance abuse disorder, Ms. Sullivan traveled to Baltimore and bought "scramble," a mix of drugs in capsules, for her longtime friend, and for herself. Without any malice in her heart, and without much in her head besides satisfying her own habit, she delivered capsules to her friend. When he took some of what she delivered to him, it mixed with other drugs in his system, and, tragically, took his life. A lab later determined the capsules contained fentanyl and acetylfentanyl.

Ms. Sullivan reacted with remorse she has shared with friends and family. Not long after her friend's death, she stopped going to Baltimore, and eventually conquered the habit that could have killed her as well. She devoted herself to her studies to become a social worker, and she has accepted responsibility for her offense by agreeing to plead guilty to conspiring to distribute fentanyl, and agreeing to recommend that two years in prison is an appropriate sentence.

Two years in prison is far more than Ms. Sullivan has ever served for any of the misdemeanor convictions that she has incurred for addiction-driven crimes over the years. It is a significant punishment, particularly now, when her children – just 17 and 10 years old – will very likely not be able to visit her due to restrictions in place in the Bureau of Prisons due to the coronavirus pandemic.

For these reasons, and those given below, Ms. Sullivan respectfully requests that the Court impose no more than two years of imprisonment at her sentencing hearing on October 26th.

I. **The proposed sentence is above the advisory U.S. Sentencing Guideline range, which the Court must consider along with the other factors in 18 U.S.C. § 3553.**

Undersigned counsel has reviewed the presentence report (PSR) with Ms. Sullivan, who raises no objections to it, though she does offer some clarifications below. Thus, all parties agree that the U.S. Sentencing Guidelines recommend a sentence of 12 to 18 months of imprisonment in this case.[1] This range reflects the quantity of fentanyl pills Ms. Sullivan distributed (base offense level 14), but also the absence of any enhancements, and Ms. Sullivan's prompt acceptance of responsibility (reducing the offense level by 2 levels, and bringing the total offense level to 12), as well as the fact that Ms. Sullivan has only misdemeanor prior convictions, the most recent of which was six years ago, and only two criminal history points, placing her within criminal history category II.[2]

The sentence Ms. Sullivan requests – 24 months of incarceration – is higher than the Guidelines recommend. The Court is empowered to impose this sentence because the guideline range is only advisory. *United States v. Booker*, 543 U.S. 220, 259-60 (2005). Section 3553 of Title 18 directs courts to consider the advisory guideline range along with the other factors listed therein, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the kinds of sentences available, (3) the need to avoid unwarranted sentencing disparities, (4) the need for restitution, and (5) the need for the sentence to reflect:

---

[1] Presentence Investigation Report ("PSR") ¶ 76.
[2] PSR ¶¶ 30-47.

3

the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a). Ultimately, the central mandate of § 3553(a) requires district courts to impose a sentence "*sufficient, but not greater than necessary*" to comply with the purposes of sentencing set forth in § 3553(a)(2).

## II. No more than 24 months is necessary to achieve the goals of sentencing in this case.

### A. *No more than 24 months is necessary given the nature and circumstances of the offense.*

There is no disputing that the consequences of Ms. Sullivan's offense were tragic. The loss of MM can never be undone, and his family must be devastated. And no matter how great a role MM's own actions and decisions played in his death, Ms. Sullivan knew better than many how difficult it would have been for MM to make other decisions in the throes of his addiction, given her own battles against drugs. In short, there is no question that Ms. Sullivan's offense was extremely serious.

However, the circumstances are mitigating. The conspiracy Ms. Sullivan was involved with was not a major distribution ring; it was a small collection of people collaborating to ensure that they themselves, and fellow end-users, got the drug they craved. In short, Ms. Sullivan was distributing in the course of feeding her own habit, which was clouding her decision making just as it was MM's.

### B. The sentence is appropriate in light of Ms. Sullivan's personal background and characteristics.

In addition, Ms. Sullivan's history and circumstances provide mitigating context for her offense. As her parents' letter to the court relates, Ms. Sullivan spiraled into drug abuse in high school.[3] From their perspective, this led to poor choices of friends and partners, to Ms. Sullivan's detriment.[4] By the time she was sharing one of the most dangerous drugs available with MM, Ms. Sullivan had been using different drugs off and on for decades, and had suffered extensive trauma and loss.

Some of the most extreme trauma in Ms. Sullivan's life had taken place in the years leading up to Ms. Sullivan's most recent interactions with MM, and his death. After Ms. Sullivan and ex-husband, the father of her daughter, had broken up in 2014, she he begun dating another man who turned out to be extremely abusive, as reflected in the PSR and Ms. Sullivan's parent's letter.[5] He continued to haunt Ms. Sullivan even after she finally broke it off with him: he violated protective orders, and broke her face in several places. Worst of all, these circumstances caused Ms. Sullivan agree with her ex-husband that their daughter should primarily live with him. She never agreed that her ex-husband could move their daughter to Florida, but he did anyway. He also found reasons to skip trips back to Virginia, and cancel visits with Ms. Sullivan.

---

[3] Exhibit 1 (Letters of Support).

[4] *Id.*

[5] PSR ¶¶ 60, 63.

The presentence report relays much of Ms. Sullivan's drug use, but the government notes that it does not reflect a lot of detail about opioid use. Undersigned counsel did review the PSR with Ms. Sullivan over the jail phone (the only option available given current restrictions at the jail), but, unfortunately, neither noticed the gap the government identifies. Ms. Sullivan would describe her use around the time of MM's death as a relapse that was spiraling out of control. She had used opioids on and off for many years. For example, when she was prescribed Percocet and Dilaudid when her teeth were being replaced in the 2011-2013 period, she supplemented her prescriptions will illegal use, and eventually tried heroin as well.

Ms. Sullivan had stopped using these pills regularly by 2018, but in the leading up to MM's death, Ms. Sullivan had learned that her ex-husband would not be bringing her daughter to Virginia for the holidays. She was extremely disappointed, and began using opioids again to ease her pain. That is when she started traveling to Baltimore to obtain scramble. She had not been back to opioids long before she started getting the same drug for her old friend MM on her trips (along with suboxone for another), as described in the statement of facts. She estimates that she was traveling up there more than a few times of week to obtain scramble by the time of MM's death. As her letter to the Court reflects, she may have told herself that she had it under control, but she was smart enough to know that if she was using heroin several times

a week, she did not have it under control.[6] MM's death has helped her fully appreciate this, as her letter to the Court reflects.[7]

    C.    *This background, and Ms. Sullivan's reaction to MM's death, establish that more incarceration is not necessary to deter her, protect the public, or promote respect for the law in Ms. Sullivan and others.*

Since MM's passing, Ms. Sullivan has redirected herself. She has focused on completing her social work degree.[8] As reflected in the attached letter, she has been earning good grades, and she was previously on track to graduate in 2022.[9] She has made plans to complete her degree when she is released.[10] She has not tested positive for any opioid while on pretrial release.

Despite initially denying distributing to MM when speaking to police, Ms. Sullivan has now taken full responsibility for her role in it. Indeed, she has always considered herself responsible for the tragedy, such as when she told a friend less than a month after MM's death that "she felt responsible for the victim's overdose."[11] Ms. Sullivan appreciates the gravity of her actions, and she has expressed remorse to her family and friends, and to this Court.[12]

---

[6] Exhibit 2 will be a letter from Ms. Sullivan. A combination of technical difficulties and difficulty getting through to Ms. Sullivan at the jail has delayed undersigned counsel's receipt of the final version, but counsel anticipates being able to submit it on or before the sentencing hearing, and apologizes for the delay.

[7] *Id.*

[8] PSR ¶ 70.

[9] Exhibit 3; PSR ¶ 70.

[10] *Id.*

[11] PSR ¶ 22.

[12] Ex. 1; Ex. 2.

All of this demonstrates that Ms. Sullivan's motivation to redirect herself and not reoffend comes from within. A felony conviction and two years in prison is sufficient to reinforce her self-motivation, and more than two years is not necessary to deter Ms. Sullivan or protect the public.[13]

The proposed sentence will be serious punishment, and will promote respect for the law. This conviction will brand Ms. Sullivan for life as a felon. She had hoped to use the social work degree she is studying for to obtain work counseling high school students, in the hope of steering them toward better path than she took. A felony conviction will make it very difficult, if not impossible, to find such work. She may eventually be able to use her skills to counsel those battling addiction, but the felony conviction will undoubtedly at least hinder her for life. The conviction will also, of course, deprive her of important civil rights.

In addition, a prison sentence is always significant punishment, and two years is a long time to be away from family. Prison time is particularly difficult today, given that many prisons – including some nearby – are not allowing outside visitors at all due to the coronavirus pandemic.[14] And, of course, a prison sentence will put Ms.

---

[13] National Institute of Justice, *Five Things about Deterrence*, at 1 (May 2016), *available at* https://www.ncjrs.gov /pdffiles1/nij/247350.pdf (last visited 6/26/20) (stating, among other things, that "[i]ncreasing the severity of punishment does little to deter crime," and "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment").

[14] For example, all visiting is suspended at FPC Alderson. *See* https://www.bop.gov/locations/institutions/ald/ (last visited 10/20/21). This is because the BOP has designated the facility as a "Operational Level 3," reflecting that the facility fits one of three criterial: "medical isolation rate ≥ 7%; facility vaccination rate < to 50%; or community transmission rate ≥ 100 per 100,000 over the last 7 days."

Sullivan at risk for infection with the coronavirus to a greater extent than she is now, as the Delta variant continues to circulate, and vaccination rates continue to be lower than required to solidify herd immunity.

Ms. Sullivan will also be punished, and continually reminded of her role in MM's death, even after she is released from prison, while on supervised release, and required to pay restitution. Supervised release will also provide very strong motivation for Ms. Sullivan to stay away from heroin, and all other drugs, or else face imprisonment again. Supervised release will also help deter Ms. Sullivan in the future, and promote the goal of rehabilitation, insofar as it will provide opportunities for more treatment as needed.

Finally, Ms. Sullivan is fortunate to have deep family support, as reflected in her parents' letter, and the education and wherewithal to succeed in life: these factors are further cause for the Court to conclude that more prison time is not necessary to protect the public, or prepare Ms. Sullivan to become the productive member of society that she herself desires to be.

## CONCLUSION

MM's death was a tragedy, and Ms. Sullivan accepts that the law calls for punishment of her role in bringing it about. A felony conviction, two years in prison,

---

*See* U.S. Bur. Pris., " BOP COVID-19 Operational Levels," at https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited 9/21/21). Programming and other operations are also restricted at these facilities. *Id.* (noting that Level 3 Operations facilities are following the "COVID-19 Pandemic Plan").

9

supervision to follow joins, and a restitution obligation are sufficient to accomplish the goals of sentencing pursuant to 18 U.S.C. § 3553. Accordingly, Ms. Sullivan respectfully requests that the Court impose no more than 24 months.

        Respectfully submitted,

        **HEATHER DAWN SULLIVAN**
        By counsel,

        Geremy C. Kamens
        Federal Public Defender

        by: /s/
        Ann Mason Rigby, Va. Bar No. 92996
        Assistant Federal Public Defender
        1650 King Street, Suite 500
        Alexandria, Virginia 22314
        (703) 600-0800 (telephone)
        (703) 600-0880 (facsimile)
        Ann_Rigby@fd.org